# EXHIBIT 6



**United States Department of the Interior**

**NATIONAL PARK SERVICE**
1849 C Street, N.W.
Washington, D.C. 20240

P4217(2740)
NPS-19-0730

FEB 1 1 2020

<u>CERTIFIED MAIL #7019 0700 0000 3801 0446</u>
<u>RETURN RECEIPT REQUESTED</u>

David J. McCutcheon

Re:   **Amended** Notice of Acceptance Letter in the Complaint of Dave McCutcheon
      Case No.: NPS-19-0730

Dear Mr. McCutcheon:

This letter is in regard to the above-referenced formal complaint of discrimination you filed with the National Park Service (NPS) on October 17, 2019, (postmark date). Please refer to the case number above in all communication regarding this complaint.

Following a review of your complaint and the EEO Counselor's Report, and in accordance with Title 29 Code of Federal Regulations (C.F.R.), Part 1614, the following claim is accepted for investigation:

> Whether the Complainant was subjected to harassment and discriminated against on the basis of sex (male), disability (physical), age (Y.O.B. June 1960) and reprisal (prior EEO activity: March 2014, NPS-13-0274, August 2019, NPS-19-0357)[1] when the following events occurred:
>
> a. On November 21, 2018, the Supervisor denied the Complainant's annual leave requests and in January 2019, the Complainant was charged Absent without Leave (AWOL);
>
> b. On November 28, 2018, the Supervisor threatened to place the Complainant on AWOL;
>
> c. In or around January 2019, the Manager reassigned the Complainant from his duty station at Ellis Island to work at Liberty Island;

---

1. In August 2019, the Complainant participated as a witness in a co-workers EEO Investigation, (Case Number NPS-19-0357).

Exhibit C-2 7 of 21                                                NPS ROI NPS-19-0730 Pg 121 of 704

    d. In January 2019, the Supervisor assigned the Complainant to a fixed post that required long periods of standing and where a rest room was not available;

    e. In February 2019, the Complainant felt threatened and intimidated when the Supervisor commented "this is not over yet, there will be disciplinary action;

    f. On March 20, 2019, the Complainant felt intimidated when the Supervisory Park Ranger issued the Complainant a Memorandum, *Use of Ellis Island for Employee Fitness* and on April 4, 2019, the Supervisor Park Ranger issued the Complaint another Memorandum, *No Contact Letter*; and

    g. On or about August 14, 2019, Management video recorded the Complainant's entrance and exits from the Park.

**On January 23, 2020, we received your email request to add new claims to your pending complaint. Following review of your request to amend your complaint and in accordance with Title 29 C.F.R. part 1614, the following claim is amended and accepted for investigation:**

    **h. On January 10, 2020, the Supervisor, Mr. Mike Amato issued the Complainant a Memorandum, Advanced Written Notice of Proposed 14-Day Suspension.**

You have provided background information in your formal complaint which you believe may help support your claims of discrimination. Although this additional information will not be investigated as separate claims of discrimination, you can provide this information to the EEO investigator at the time of your investigation and it will be included in the Report of Investigation (ROI)

If you believe that the claim in your complaint has not been correctly identified, please provide this office written clarification within five (5) calendar days after your receipt of this letter, specifying why you believe the claim has not been correctly identified. The allegations must be limited to the claims discussed with your EEO Counselor. If you do not reply within the specified time period, we will assume that you agree with the claim as defined above.

An EEO investigator will be assigned to thoroughly investigate all aspects of the claim accepted for processing. The investigator has the authority to administer oaths and to require employees to furnish affidavits under oath or affirmation without a promise of confidentiality or, alternatively, by written statements under penalty of perjury. You have a responsibility to cooperate with the investigator by timely scheduling an appointment, meeting with the investigator, and providing necessary written statements. Failure to do so may result in the dismissal of the complaint for failure to cooperate.

Exhibit C-2  8 of  21     NPS ROI NPS-19-0730 Pg 122 of 704

Once the investigator is assigned, he/she will contact you and inform you of the date when the investigation is expected to begin. When the investigation is concluded, you will be provided a copy of the investigative file along with rights and responsibilities regarding the further processing of the complaint. If you do not wish to pursue the complaint, you may withdraw it at any time by completing and returning the enclosed withdrawal form.

If you have any questions regarding this matter, please contact Ronald Hayes, EEO Specialist, at (202) 354-1853.

Sincerely,

Rose Blankenship
Chief, Office of Equal Opportunity Programs
Department of Interior, National Park Service

Enclosure: Withdrawal of Complaint Form

cc:   Megan O'Connor, Acting EEO Manager, Region 1- North Atlantic

Exhibit C-2 9 of 21                                                                                   NPS ROI NPS-19-0730 Pg 123 of 704



# United States Department of the Interior

**NATIONAL PARK SERVICE**
1849 C Street, N.W.
Washington, D.C. 20240

P4217 (2740)
NPS-19-0730

## WITHDRAWAL

Complainant's Name: __Dave McCutcheon__   Case Number: __NPS-19-0730__

I do not intend to pursue the above-referenced formal complaint and am withdrawing the formal complaint. I understand that the Equal Employment Opportunity Programs at the National Park Service will close the complaint and will have no obligation to further process the complaint. I am forwarding my written withdrawal form to the address indicated below:

        Office of Equal Opportunity Programs
        Equal Employment Opportunity Programs
        1849 C Street, N.W., MS-2505
        Washington, DC 20240

_____   _____
Complainant                                                            Date

_____   _____
Complainant's Representative (if applicable)        Date

Exhibit C-2 10 of 21                                                          NPS ROI NPS-19-0730 Pg 124 of 704

1/23/2020 DEPARTMENT OF THE INTERIOR Mail - [EXTERNAL] Fw: NPS 19-0730 - Request your immediate response for contact info.on my for…

Case 1:20-cv-10616-VF    Document 28-6    Filed 12/20/21    Page 6 of 16



Hayes, Ronald <ronald_hayes@nps.gov>

## [EXTERNAL] Fw: NPS 19-0730 - Request your immediate response for contact info.on my formal EO investigator

Thu, Jan 23, 2020 at 12:00 AM

Hello Mr. Hayes

Thank you for clarifying the EEO compliant investigation process. I am sorry that I wasn't be able to get back to you sooner. The building of my apartment got on fire in the earlier morning last Friday(1/17/2020). I haven't been able to go to work due to the severe damages in my living quarters, and various inspections in/out everyday, etc. I am still waiting for a temporary housing which will be assigned to me soon for at least two or three months, meanwhile I have to clean and organize my belongs to prepare for long term storage and/or moving, etc.

I am currently living under an extreme hardship situation including high anxiety and stress from escalated harassment from the workplace, physical pain and my actual inhabited condition and feeling sick with the cold. This 14-day proposed suspension personal proposal is an evidence of escalated harassment towards me. The deciding official named in this proposal has extended the response due date to COB next Monday(1/27/2020).

Please let me know what it takes to add this 14-days suspension proposal to my current EEO compliant item list, and a few other items that were included in this suspension supporting documents, which I need to add on the list of current EEO my compliant list.

Thank you,

Dave

[Quoted text hidden]



**United States Department of the Interior**
NATIONAL PARK SERVICE
Statue of Liberty National Monument
Ellis Island National Museum of Immigration
1 Liberty Island
New York, New York 10004-1418

January 10, 2020

Memorandum

To:         David McCutcheon, Park Ranger (Interpretation), Statue of Liberty National Monument

From:       Michael Shaver, Supervisory Park Ranger, Statue of Liberty National Monument

Subject:    Advanced Written Notice of Proposed 14-Day Suspension

This is notification of my proposal to suspend you for fourteen (14) calendar days from your position of Park Ranger (Interpretation), GS-0025-09, at the Statue of Liberty National Monument (STLI) and Ellis Island National Museum (ELIS). Consistent with 5 U.S.C., Chapter 75, Subchapter I; 5 C.F.R. Part 752, Subpart B; and U.S. Department of the Interior Manual under 370 DM 752, I propose this disciplinary action for such cause, as described herein, to promote the efficiency of the Federal Service. This proposed 14-day suspension is based on the following charges: (1) Absent without Approved Leave, (2) Failure to Follow Leave Procedures, (3) Conduct Unbecoming and (4) Failure to Follow Instructions. If your suspension is sustained in writing by David Moore, Administrative Officer, the deciding official in this matter, it will become effective as soon as possible after your response is received. If no written or oral reply is received by the Deciding Official, your suspension will become effective at the earliest practicable date after your **ten (10) calendar day** response period ends.

## FACTUAL BACKGROUND

As a Park Ranger (Interpretation), GS-0025-09 assigned to STLI and ELIS, you are responsible for increasing visitor understanding of park resources, visitor enjoyment of the park and its resources, visitor understanding of the National Park Service mission and the park's enabling legislation, inducing in visitors behavior consistent with resource protection and compliance with the laws and rules for safe use of the park, and inspiring visitors to develop a sense of stewardship for park resources and a personal environmental consciousness in their daily lives. In accomplishing these duties, the Agency expects that you will be available, respectful, professional, courteous, and timely. It follows that your dependable presence in the workplace is necessary to advance the Agency's missions, goals, and initiatives.

On August 21, 2018, you requested annual leave for December 26, 2018 through December 28, 2018. On September 6, 2018, you requested annual leave for December 19, 2018 through December 21, 2019, and December 24, 2018. On November 21, 2018, during your meeting with Suzanne McCoy, Supervisory Park Ranger, she informed you that she denied your request for leave due to insufficient operational coverage. At this time, you informed her you had seniority

Exhibit C-2 12 of 21                                    NPS ROI NPS-19-0730 Pg 126 of 704

and were not going to let anyone who even has a week's seniority below you get his or her leave approved, and that you would not be coming in.

On November 30, 2018, you were issued a record of conversation via email where you were put on notice that "if you chose not to report to work when scheduled and take your unapproved leave, you will be coded as absent without leave (AWOL)." On the morning of December 19, 2018, you called out for the day stating you had a doctor's appointment. On December 20, 2018, you called out stating you had a doctor's appointment. On December 21, 2018, you called out and left a voicemail stating, "I have my doctors notes, and I am now following the policy of the Union and I will be back on the 31st of December." You then continued to call out for those seven days that your leave was denied.

On February 27, 2019, you submitted a doctor's note, dated December 19, 2018, from Advanced Acupuncture Services, P.C., which stated, "Patient is advised to avoid standing for prolonged periods of time and strenuous activities." On February 27, 2019 you also supplied a doctor's note, previously provided to Ms. McCoy, dated December 20, 2018, from Roy H. Siegel, D.C. Chiropractor stating the he "recommended [you] stay home from work today." Sick leave was granted for December 20, 2018.

You failed to follow leave procedures by proceeding to call out for the subsequent days you had scheduled unapproved leave and disregarded Ms. McCoy's warning that choosing "not to report to work when scheduled and take your unapproved leave, you will be coded as absent without leave (AWOL)." Furthermore, on December 21, 2018 you stated you had doctor's notes and "I am now following the policy of the Union and I will be back on the 31st of December." You were charged AWOL for December 19, 2018, December 21, 2018, December 24, 2018, December 26, 2018 through December 28, 2018, returning to duty on December 31, 2018. During your formal discussion on April 9, 2019, you admitted that you had family plans as your wife and son, as they had off from work and school.

On December 17, 2018, you were working at the top level of the Statue of Liberty pedestal at 6P to control access of visitors to the Crown of the Statue. In order to prevent fraudulent reuse of the wristbands, Park Rangers are to remove the Tyvek paper wristbands with a pair of child scissors. On that day, visitor Ms. Kerrie Edge from Birmingham, England, filed a complaint with Supervisory Park Ranger Melissa Magnuson-Cannady. Ms. Edge stated you used scissors to cut off her wristband, and while doing so you nicked her wrist. She specified that you were "very rude and (you) said it would've been a miracle if [you] did catch (cut) [her] as they're child scissors."

While at the crown, Ms. Edge spoke with Bryanna Plog, Park Ranger (Interpretation), and Reneel Langdon, Park Ranger (Interpretation), about this incident. Ms. Edge showed Mr. Langdon the small bruise and cut on her wrist, and indicated she wasn't bothered by the bruise "but by [your] unapologetic response" and rudeness. Mr. Langdon encouraged Ms. Edge to file a complaint at the visitor center, and contacted the supervisor on duty via phone from the Crown. While Ms. Edge waited for the phone to speak with the supervisor on duty, she spoke with Ms. Plog and explained what happened. Ms. Plog explained that Ms. Edge was "upset that [you] didn't acknowledge that it happened" and felt dismissed as if you did not believe her. At that point, Ms. Edge got on the phone with Ms. Magnuson-Cannady to report the incident, verbally, then formally

2

Exhibit C-2 13 of 21                                                           NPS ROI NPS-19-0730 Pg 127 of 704

in writing once she was back at the Visitor Center desk from the Crown. During your formal discussion on April 9, 2019, you stated there is no protocol provided to Park Rangers on how to handle this type of situation.

On January 6, 2019, in accordance with closing procedures, Jennifer Seron, Park Ranger (Interpretation), was closing the Northwest (NW) tower stairwell and the outer perimeter at ELIS when she noticed you and a group of visitors at the flagpole. You were assigned to close out the Northeast inner perimeter, which the flagpole is outside of your closing perimeter. At this point, Ms. Seron approached you and the visitors at the flagpole, thanked the visitors for coming but informed them it was closing time. You then informed Mr. Seron that you were closing this part of the perimeter out and she should do the other path, and informed her not to come up behind you like that again. Ms. Seron responded to you that, "NW is supposed to do the outer perimeter." You then stated loudly in front of the visitors, "Are you stupid?" Ms. Seron tried to make light of the conversation since the visitors were present by stating "possibly." At this point, the visitors slowly made their way towards the boat to leave the island. Ms. Seron later approached you to discuss what happened, and to inform you that she didn't appreciate you calling her "stupid" in from visitors. You responded, "You are not my Supervisor" and that you don't want to talk to her, and she is not to talk to you. Ms. Seron then reported this to Doug Treem, the assigned Lead 9 that day, who also confirmed that the NW does close out the outer perimeter during closing of ELIS. Later that day, Ms. Seron went to the woman's staff locker room to change out of her uniform. During this time, she overheard from the adjoining locker room that you told Mr. Peter Urban, Park Ranger (Interpretative), "We could put her on acid." Ms. Seron took this statement as a direct threat to her physical well-being.

As a result, on January 16, 2019, this incident was reported as per National Park Service Director's Order 16E as alleged harassment based on inappropriate workplace conduct. You were reassigned to Liberty Island consistent with the provisions of DO-16E to avoid contact with Ms. Seron while this claim was to be investigated. On February 27, 2019, you provided a statement in response to this report of misconduct. In your statement you admitted saying to Ms. Seron, "You are stupid!!" You further described, "I realize calling her stupid was not the best thing to say. I should have used better judgement." This claim was closed out in the NPS harassment tracking system on March 14, 2019, as there was no protected status affiliated with this complaint; however it was recommended to be investigated internally for misconduct. During this investigation, in addition to written statements from you and Ms. Seron, interviews were conducted with you, Ms. Seron and Mr. Urban. Ms. Seron confirmed her written account with no additional information. You provided your verbal and written account of the incident. Mr. Urban was queried about his recollection the incident that happened that day, particularly the comment made in the locker room of "[W]e could give her acid." Mr. Urban remembered hearing about the closing procedure incident, but had no recollection of any conversation with you that took place in the locker room or the comment about giving Ms. Seron "acid."

Accordingly, you and Ms. Seron were issued a No Contact Instruction on April 4, 2019. This Instruction was issued in part based on the harassment complaint, but also on the overheard comments in which you made about "putting her on acid," which prompted a justifiable concern by Ms. Seron and Park Managers. This instruction also informed you that the temporary reassignment for you and Ms. Seron is still in effect and there is to be no contact with either party

without prior notice, arrangements made, and authorization issued by the division supervisors. You were also informed for any non-official or personal need to go to ELIS, permission must be requested and written permission must be granted by your current operational supervisor prior to any appearance at ELIS. On May 3, 2019, you failed to follow these instructions and went to ELIS without supervisory permission, as you were assigned to STLI that day. Peter Wong, Supervisory Park Ranger, witnessed you at ELIS. As Mr. Wong was aware that you needed additional permission to be at ELIS, he asked if received that approval. Your response was, "[T]he union had said that I could come to Ellis Island, and that they (management) had no right to keep me from coming." During your formal discussion on August 20, 2019, you stated that this action was based on your hearing that the 16E complaint was closed and this was the advice received from the union. However, the union indicated they had no knowledge of the written instruction of the No Contact.

## BASIS FOR PROPOSED ACTION

The foregoing facts firmly support the following charges and related specifications. Along with the foregoing facts, the following charges, specifications, and analysis of the relevant factor(s) provide the basis for this proposed action.

### Charge 1: Absent Without Approved Leave (AWOL)

Specification 1: On December 19, 2018, your absence was not authorized and your leave was denied due to insufficient operational coverage. December 21, 2018, December 24, 2018, December 26, 2018 through December 28, 2018, you were absent, without approval, from Liberty Island, your required duty station. You were required to be at your duty station during that period. Your absence was not authorized and your leave was denied due to insufficient operational coverage.

### Charge 2: Failure to Follow Leave Procedures

Specification 1: You failed to follow leave procedures by proceeding to call out of work on December 19, 2018, December 20, 2018, and December 21, 2018. You had scheduled unapproved leave and disregarded Ms. McCoy's warning that choosing "not to report to work when scheduled and take your unapproved leave, you will be coded as absent without leave (AWOL)." Furthermore, on December 21, 2018 you stated "I am now following the policy of the Union and I will be back on the 31st of December."

### Charge 3: Conduct Unbecoming

Specification 1: On December 17, 2018, visitor Ms. Kerrie Edge (EDGE) from Birmingham, England filed a complaint with Melissa Magnuson-Cannady, Supervisory Park Ranger, stating you used scissors to cut off her wristband that provided access to the Crown at STLI, and while doing so you nicked her wrist. She specified that you were "very rude and (you) said it would've been a miracle if [you] did catch (cut) [her] as they're child scissors."

<u>Specification 2:</u>  On January 6, 2019, in accordance with closing procedures, Ms. Jennifer Seron responded to you "NW is supposed to do the outer perimeter." You then stated, loudly in front of the visitors, "Are you stupid?"

**Charge 4: Failure to Follow Instructions**

<u>Specification 1:</u>  On April 4, 2019, you were informed for any non-official or personal need to go to ELIS, prior permission must be requested from your current operational supervisor / supervisory park rangers at STLI and must be granted in writing. On May 3, 2019, you failed to follow these instructions and went to ELIS without supervisory permission, as you were assigned to STLI.

## PROPOSED PENALTY ANALYSIS

This proposed action will improve the efficiency of the Federal service by impressing upon you the severity of your misconduct and will demonstrate that such behavior will not be tolerated. I considered the relevant facts and the charges and specifications listed above, and the analysis as discussed below as the basis for this proposed suspension.

I simultaneously considered several relevant factors: the importance of the **position** that you presently hold and the **significant duties** that you currently perform and have performed for approximately 29 years; the **nature and seriousness** of the charges and related specifications; and the close **relationship** between your serious, intentional, and repetitive **misconduct** and your official **duties**. You currently hold the position of GS-0025-09 Park Ranger (Interpretation), whose duties are first, to increase visitor understanding of park resources. Second, to increase visitor enjoyment of the park and its resources. Third, to increase visitor understanding of the NPS mission and the Park's enabling legislation. Fourth, to induce in visitors behavior consistent with resource protection and compliance with the laws and rules for safe use of the park; and lastly, to inspire visitors to develop a sense of stewardship for park resources and a personal environmental consciousness in their daily lives.

You have a full-time, permanent career appointment; as such, the very essence of your job is to work with the general public and to accomplish your daily duties with professionalism, courtesy, and in accordance with policies and proper orders. To accomplish any of those objectives requires engaging the public in a positive manner and providing visitors of STLI/ELIS with a positive experience. Your position requires you to work effectively both externally with the public and internally as a contributing member of the park staff to facilitate visitor's understanding of the park's resources and satisfaction with its facilities, services and your role in their visit. Customer service must be provided in a courteous manner. Your position and long tenure at this park makes you an example to all your colleagues – from your peers in tenure to the seasonal employee in their first position with the NPS – in providing positive customer service under demanding circumstances and demonstrating respect for your co-workers, especially in the eyes of the public. You additionally have regular contact with NPS personnel at the local and regional levels, professional organizations, as well as the public. Consequently, there is the expectation that you engage a wide range of park visitors and offer a variety of opportunities for people to make meaningful connections to the park's resources and participate in the park's experiences.

5

Exhibit C-2 16 of 21                                                                                     NPS ROI NPS-19-0730 Pg 130 of 704

Your **intentional** misconduct – in the form of being absent without approved leave, behaving in a discourteous manner towards others, and failure to follow instructions – evidences lack of judgment, disrespect to visitors and your coworkers, and disregard for authority, and illustrates your refusal to arrive for work predictably. Additionally, your misconduct significantly interferes with your ability to perform your assigned duties as Park Ranger, a position which demands your timely and predictable presence in the work place and demands that you treat all others respectfully. Because your misbehavior has a direct adverse relationship to or with your official duties and damages your reliability and dependability, I find your misconduct to be very serious and wholly unacceptable. On behalf of the NPS, I will not tolerate such serious misbehavior from an employee in your position.

I also considered your **past disciplinary record**. My review of the administrative record indicates that there are no existing disciplinary actions in your record. This factor leads me to conclude that proposed penalty less severe than a 14-day suspension might be appropriate to address your serious misconduct. However, because I find particularly troubling, and entirely unacceptable, your pattern of disregard for management and others identified in this advance written notice of proposed suspension, I have determined that the effects of your clean record do not substantially outweigh the seriousness of your misconduct.

Additionally, your approximately 29 **years of Federal Service**, and your high-level **performance ratings** have been given significant consideration and weight. However, I find that neither your years of service nor your performance ratings warrant imposing a penalty less than a 14-day suspension. I find it deeply concerning with your behavior in the number of incidents, the negative views and perceived level of rudeness you have expressed during these exchanges with visitors, co-workers, and supervisors. Your misconduct has adversely affected my belief in you as an employee, and has diminished my **confidence** in your ability to effectively perform your assigned duties as a Park Ranger (Interpretation) in an honorable manner. The erosion of trust and confidence is not only in your ability to represent the image as a Park Ranger (Interpretation), but a possibly suggest a lack of desire or willingness to do so. Unfortunately, while your work product is generally acceptable, my confidence has diminished as your misconduct, as detailed above, is alarming and counter to your demonstrated performance.

The behavior at issue adversely affects your ability to do your job – which is dependent on dealing with the public in positive or inoffensive manner as an occasional encounter might be. I believe it is testing the agency's trust and confidence in accomplishing your job. In the end, such misconduct is interfering with and adversely affecting the NPS's mission and fails to promote the efficiency of the Federal Service

I considered the **consistency** of the proposed penalty in relation to discipline imposed on other employees, with whom you are similarly situated. Unaware of any other NPS employee who has engaged in serious misconduct similar to yours, under the same or similar circumstances, and whom the Agency disciplined with a penalty less severe, I submit that my proposal to suspend you for 14 days does not evidence any disparate treatment.

A review of the Department's **Table of Offenses and Penalties** (Table), 370 DM 752, which provides guidance for imposing discipline relevant to various forms of misconduct, leads me to

Exhibit C-2 17 of 21                                                                            NPS ROI NPS-19-0730 Pg 131 of 704

conclude that the Table supports a suspension of 14 calendar days for your misbehavior. The penalty range for a first offense of absent without approved leave and failure to follow leave procedures is a written reprimand to 5-day suspension, conduct unbecoming from a written reprimand to 5-day suspension, and failure to follow instructions is a written reprimand to 14-day suspension. It follows that proposing to suspend you for 14 days is consistent with the subject Table

I considered the **notoriety** of your serious misbehavior. Other NPS employees and the visiting public, several of whom observed your actions and heard your comments, are aware of your misbehavior. Excusing your serious misbehavior would erode confidence in the NPS and would improperly signal to those with actual knowledge of your wrongdoing that you, as a Park Ranger, may (without consequence) be absent without leave and may behave in a discourteous manner toward your fellow employees or the public. Actual and constructive knowledge of your serious misbehavior compels me to conclude that disciplinary action against you must be clear and firm. Accordingly, I find that proposing your suspension, for 14 calendar days without pay, from your position of record is warranted, appropriate, and necessary to avoid an erosion of confidence in the ability of the NPS to ensure the timely and predictable presence of employees in the work place and to promote respectful behavior in the NPS.

With respect to **notice**, on November 15, 2016 you displayed conduct unbecoming to a visitor, and her companion, who asked you for directions to an audio guide stop, which resulted in a written complaint to the park. You were informed of this complaint by Chief of Interpretation Michael Amato and advised letters of this nature do not reflect well on the park. You displayed similar misconduct towards your supervisor, Peter Wong, on December 16, 2016, which took place in public and in full view of visitors.

In the conversation on November 21, 2018 about the denial of leave, in part of which I overheard, and the record of that conversation, Supervisory Park Ranger Suzanne McCoy clearly stated what actions the park would have to take if you carried out your stated intention of, "I just want you to know, I'm not coming in." Under the "No Contact Instruction" issued on April 4, 2019, you had clear notice of what the expectations and instructions were for you to follow.

On August 20, 2019, you were informed of a complaint made by Kelsey Taormina, Park Ranger (Interpretation), and Kirk Barclay, Laborer, that you disrespected a visitor when you pushed your way through a crowd of visitors on the ferryboat that was leaving STLI. Mr. Barclay indicated you forced your way between him and the visitor "without saying excuse me or anything to [the] visitor, while at the same time striking the visitor with [your] back pack as [you] force[d] [your] way through." Also, Mr. Barclay indicated it was clear that the visitor was upset by your actions.

I find that you knew with great clarity that your misconduct would not be tolerated. Despite the clarity and timeliness of notice, you acted irresponsibly and improperly, and in direct conflict with basic knowledge and warnings expressly supplied to you.

Evaluating your **potential for rehabilitation**. I find that it does exist given that you have no previous disciplinary actions on record and your acknowledgement of the misconduct at issue.

Therefore, I am very hopeful that this proposed 14-day suspension will be enough to impress upon you the seriousness of your actions and this behavior will not be repeated.

I am unaware of any **mitigating circumstances** regarding unusual job tensions, personality problems, or mental impairment. Nor did you offer any mitigating circumstances that would explain of any evidence of bad faith, malice or provocation on the part of others. Having identified no additional mitigating circumstances surrounding your offenses, I have proposed a 14-day suspension as a reasonable penalty in response to your serious misconduct.

After evaluating all of the above information, I have determined that a lesser or alternative action would not be enough to impress on you the nature of your misconduct. In fact, I have seriously considered proposing a more severe penalty for your misconduct, but desire to give you another opportunity to improve your behavior; as such, a lesser penalty would be wholly insufficient to improve your conduct. Therefore, I am proposing a 14-day suspension to impress upon you just how serious and inappropriate I consider your misconduct to be.

## CONCLUSION

After evaluating all of the above information, I have determined that your actions are unacceptable and must not be repeated. In balancing the seriousness of your actions and the mitigating factors against the nature and seriousness of this offense, I believe a 14-day suspension is reasonable under the circumstances.

I want you to understand that your behavior is completely improper. I hope that it will make you realize the seriousness of your behavior and the need to correct it immediately. Further behavior of this nature will result in further disciplinary action, up to, and including your removal from Federal Service.

## EMPLOYEE RIGHTS AND PROCEDURES

All material relied upon to support this proposed suspension are attached. You have the right to reply to this proposal orally and/or in writing (and furnish affidavits and other documentary evidence), no later than ten (10) calendar days from the date you receive this proposed action. Any response you make must be made to the Deciding Official:

David Moore, Administrative Officer
National Park Service
1 Ellis Island
Jersey City NJ 07305-1776
Telephone: (646) 356-2116
Email: David_h_moore@nps.gov

Your reply should include any information or evidence you want the Deciding Official to consider in making the decision. If you need to request an extension of time to reply, your request must be in writing and must be received by the Deciding Official no later than close of business at the end of the ninth (9) calendar day response deadline. It must state the reason for your request and the

amount of additional time needed. The Deciding Official will respond to you, in writing, either granting or denying (fully or partially) the time extension request.

If you consider this proposed action improper, as you are a member of AFGE Local 3432, you are entitled to representation by the Union in preparing and presenting your reply.

You may represent yourself or elect to be represented by an attorney or other individual of your choice unless such representation would result in a conflict of interest or position, conflict with the priority needs of NPS, or give rise to unreasonable costs to the government. You or your representative, if an agency employee, may be allowed a reasonable amount of duty time to review the supporting material, to seek advice and assistance in preparing your reply, for securing affidavits and statements, or for making a reply. Requests for such duty time must be submitted, in advance, by you to me for approval and by your representative to his/her immediate supervisor for approval.

If you believe that medical problems are the reasons for your actions, you may provide documentation of a medical condition along with your written and/or oral response.

You will remain in duty status during this notice period. Full consideration will be given to any reply you make and you will receive a written decision on the proposal at the earliest practicable date after receipt of your reply. If you choose not to reply, a decision will be made as soon as practicable after expiration of the time allowed for your reply.

You are entitled to a reasonable amount of official time (normally hours, not days) to review the material relied on to support this proposed action and to prepare and present your reply. Use of any official time for this purpose must be made to and approved by a Liberty Island supervisor or alternately, to myself in advance. (NOTE: official time is only applicable to an employee in an active duty status. 370 DM 752 (C)(4).)

The proposed action, if sustained by the Deciding Official, will not be effective earlier than ten (10) calendar days from the date on which you receive this notice.

Since I am concerned about your well-being, I want to remind you that our Employee Assistance Program (EAP) is available to you. To participate in the EAP, simply call Espyr (previously EAP Consultants, Inc.) at 1-800-869-0276 or securely request services directly from the Member Access page at https://espyr.com, and use our password: interioreap. The use of the program is also confidential, within the bounds of the law. EAP will not disclose to us who uses the program.

Should you have other questions about this proposal, please contact Marisha Pucilowski, Labor and Employee Relations Specialist, Northeast Region Office at (215) 597-7070.

**Acknowledgement of Receipt**

Please sign and date the copy of this memorandum to acknowledge you have received it and return the signed copy to me for inclusion in my file.

1. I acknowledge receipt of this memorandum:

Employee: _____    Date: _____

Or

2. Employee chose not to sign as receiving the memorandum.

Supervisor: _____    Date: _____

Supervisor: _____    Date: _____

10

Exhibit C-2 21 of 21                                                                 NPS ROI NPS-19-0730 Pg 135 of 704