UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DAVID MCCUTCHEON,

                                   Plaintiff,                    20-CV-10616 (VF)

                  -against-                                      <u>OPINION & ORDER</u>

UNITED STATES OF AMERICA DEPARTMENT
OF INTERIOR, NATIONAL PARKS SERVICE;
DAVID L. BERNHARDT, SECRETARY OF THE
UNITED STATES DEPARTMENT OF INTERIOR,

                                   Defendants.
-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

On December 16, 2020, Plaintiff David McCutcheon commenced this employment

discrimination action against the United States Department of the Interior ("DOI"), National

Parks Service and Debra Haaland, in her official capacity as the Secretary of the Interior

(collectively, "Defendants").[1] ECF Nos. 1 ("Compl."), 24 ("Am. Compl."). Plaintiff's amended

complaint asserts six causes of action: (1) a claim for hostile work environment under the

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; (2) a claim under the Rehabilitation Act for

retaliation based on complaints of discrimination; (3) a claim for age and disability

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et

seq.; (4) a claim under Title VII for retaliation based on complaints of discrimination; (5) a claim

of employment discrimination based on age under the Age Discrimination in Employment Act of

---

[1] On March 16, 2021, Debra Haaland became the Secretary of the Interior, and is
therefore substituted as a named defendant for former Secretary David L. Bernhardt. See Fed. R.
Civ. P. 25(d) (permitting automatic substitution of a party who is a public official sued in his
official capacity when the public official "ceases to hold office" while a suit is pending).

1967 ("ADEA"), 29 U.S.C. § 621 et seq.; and (6) a claim under the ADEA for retaliation based on complaints of age discrimination. Am. Compl. ¶¶ 106-56.

Pending before the Court is Defendants' motion to partially dismiss the amended complaint for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See ECF Nos. 25-28. Defendants seek to dismiss: (1) Plaintiff's third and fourth causes of action under Title VII, because Plaintiff has failed to state a plausible claim of discrimination and retaliation; (2) Plaintiff's second, fifth, and sixth causes of action, alleging discrimination and retaliation under the ADEA and Rehabilitation Act, to the extent those claims rely on conduct that occurred before July 2019, because Plaintiff failed to exhaust his administrative remedies; and (3) Plaintiff's first cause of action, alleging a hostile work-environment claim under the Rehabilitation Act, because Plaintiff's allegations do not plausibly state a claim.[2] See Def's Br. at 1, ECF No. 26. Defendants also seek to dismiss all six causes of action as alleged against the DOI, because the agency is not a proper defendant. See Def's Br. at 2. Finally, Defendants contend that to the extent any of Plaintiff's claims concern a failure to promote in 2014, the claims should be dismissed as untimely.[3] Def's Br. at 1. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part.**

---

[2] Defendants are not moving to dismiss Plaintiff's age-discrimination claims to the extent they are based on his failure to be promoted in August 2019 and his receipt of a suspension notice in January 2020. Def's Br. at 1 n.2, ECF No. 26. Nor do Defendants seek dismissal of Plaintiff's retaliation claims to the extent they allege retaliatory conduct that occurred after July 13, 2019. Id.

[3] Although Plaintiff raises allegations in his amended complaint that pertain to a failure to promote in 2014 (see, e.g., Am. Compl. ¶¶ 15-33), Plaintiff does not assert a stand-alone failure-to-promote claim.

# BACKGROUND

### A. Factual Background[4]

Plaintiff, who was born on June 25, 1960, and was over the age of 40 at the time of the alleged events, has been employed by the National Park Service as a Park Ranger since July 15, 1990. Am. Compl. ¶¶ 4-5, 11. Plaintiff was assigned to the Statue of Liberty ("Liberty Island") and Ellis Island National Parks in New York City. Id. ¶ 12. As a result of the terrorist attacks on September 11, 2001, Plaintiff suffers from post-traumatic stress disorder ("PTSD"). Id. ¶ 14.

From 1990 to 2013, Plaintiff worked as a Park Ranger "without incident," was "commended for his work performance," and received "above average evaluations." Id. ¶¶ 13, 15. Since 2013, Plaintiff had "regularly" asked his supervisors "to be considered for promotion" and he "applied for numerous promotional positions." Id. ¶¶ 16-17. Plaintiff was qualified for each position he applied to, having over 20 years of experience with the Parks Service and an "unblemished record" as a Park Ranger. Id. ¶ 18. Plaintiff was nevertheless "passed over for promotion." Id. ¶ 19. The candidates chosen for the positions that Plaintiff sought were less experienced and often under the age of 40. Id. ¶ 20.

In 2014, Plaintiff received a "perfect score" on his rating of qualified candidates for promotion, "the highest of any candidate who sought promotion." Id. ¶ 22. Around that time, there was a "promotional position" for which Plaintiff was not interviewed, whereas four other individuals were interviewed. Id. ¶¶ 23-25. Plaintiff was not included on the list of "qualified candidates for promotion"; Michael Amato and others were on the list, and those individuals

---

[4] The factual allegations recounted herein are taken from the amended complaint. For purposes of considering Defendants' motion to dismiss, the Court accepts as true all well-pled factual allegations in Plaintiff's amended complaint and draws all reasonable inferences in Plaintiff's favor. ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

were all interviewed for the promotion. Id. ¶¶ 22-25. Plaintiff subsequently submitted a complaint to the Equal Employment Office of the DOI, alleging discrimination. Id. ¶ 26. After his complaint, Plaintiff was included, along with 15 additional candidates, on the candidate list for promotion. Id. ¶ 27. Plaintiff and the other candidates were interviewed for the promotions, which were ultimately given to Michael Amato and two other individuals. Id. ¶ 28. According to Plaintiff, "the candidates chosen for said positions often were under the age of 40" and had less experience than Plaintiff. Id. ¶ 20. "In less than one year," Amato received two promotions, the second of which was "predetermined." Id. ¶¶ 32-33.

On November 4, 2018, Plaintiff suffered a "debilitating" injury to his left foot and ankle, which prevented him from walking and caused him to miss several days of work. Id. ¶¶ 34-36. On November 28, 2018, Plaintiff was transferred by his supervisor, Michael Amato, from Ellis Island, where Plaintiff had led educational programs since September 2001, to Liberty Island, where he was assigned to work the crowd of visitors. Id. ¶ 37. Because of the transfer to Liberty Island, Plaintiff was denied opportunities to work "night events" at Ellis Island and consequently lost the opportunity to make "significant amounts of overtime pay."[5] Id. ¶¶ 90-91. Plaintiff contends that the transfer to Liberty Island was "in retaliation for [his] complaints of discrimination." Id. ¶ 92.

Plaintiff's new position at Liberty Island forced Plaintiff to stand during the workday, exacerbating his foot injury. Id. ¶ 38. Plaintiff told Amato that he was "disabled" and receiving treatment for his foot injury, and that working on Liberty Island triggered "severe anxiety" stemming from his PTSD following the September 11th attacks. Id. ¶ 39. In Amato's office in

---

[5] Plaintiff alleges that these overtime opportunities were "regularly given to younger employees" with less experience. Am. Compl. ¶ 93.

November 2018, Amato laughed at Plaintiff, told Plaintiff that he could not "picture" him as a supervisor, and ignored Plaintiff's request for a reasonable accommodation, requiring Plaintiff to continue working on Liberty Island. Id. ¶¶ 40-42, 71, 89.

As a result of having to stand through his shifts at Liberty Island, Plaintiff's foot injury worsened and after two weeks, Plaintiff could barely walk and necessitated "extensive medical treatment." Id. ¶¶ 44-46. On December 27, 2018, Plaintiff's doctor wrote a letter to Plaintiff's employer, stating that Plaintiff had been directed "not to stand" to perform his work duties, "especially during the period of December 26th and December 27th," so as to not "aggravate" the foot injury, for which Plaintiff had been participating in a "physical therapy program." Id. ¶ 47. Plaintiff remained assigned to the "long-standing foot posts" on Liberty Island, although Plaintiff was assigned to an "inside position" that allowed him to sit for two hours a day. Id. ¶¶ 48, 50. He was in that position from "the date of his transfer through January 4, 2019." Id. ¶ 50. Plaintiff was also "regularly assigned" to posts without heat or a bathroom. Id. ¶ 49.

Like he had done for "several years prior," in August or September 2018, Plaintiff requested "leave at the end of the year." Id. ¶ 52. The determination as to whether an employee can take leave is "normally based on seniority." Id. ¶ 53. During prior years, Plaintiff had been allowed to take leave without incident. Id. ¶ 52. On November 21, 2018, however, Plaintiff was told that his leave request was denied, which was "highly unusual" because Plaintiff would lose the time if not used and his leave request should have received "top priority" given his seniority. Id. ¶¶ 56-57.

On February 26, 2019, Plaintiff returned from "furlough" and was told by Amato and another manager, Suzanne Rose McCoy, that he was receiving an Away without Leave ("AWOL") charge for missing seven days of work, from December 19, 2018, until December 28,

2018. <u>Id.</u> ¶ 51. During the time he was "out," Plaintiff was receiving "medical treatment for his foot on four of the seven missed work days." <u>Id.</u> ¶ 55. Plaintiff gave his employer a note "related to his treatment." <u>Id.</u> After the AWOL charge, Plaintiff filed a grievance with his union and his leave was restored. <u>Id.</u> ¶ 97.

In August 2019, Plaintiff was working at the Touch Gallery Museum on Liberty Island, when he noticed Amato standing outside the window staring at him for approximately 10 minutes. <u>Id.</u> ¶ 74. Amato's conduct made Plaintiff extremely uncomfortable. <u>Id.</u> Plaintiff took a picture of Amato, and after seeing Plaintiff take a picture of him, Amato stormed inside and yelled at Plaintiff in front of patrons. <u>Id.</u> ¶¶ 75-76. It was common among supervisors to stare at employees as a means of "intimidation." <u>Id.</u> ¶ 77. For example, Mike Shaver, another one of Plaintiff's supervisors, "implored the same tactics on Plaintiff numerous times," including in September 2019. <u>Id.</u> ¶ 78.

Also in August 2019, two Educational Ranger promotional opportunities opened. <u>Id.</u> ¶ 8. For these vacancies, "normal protocols were not followed," and Plaintiff was not made aware of the vacancies in "the way [he] normally" would have been made aware. <u>Id.</u> ¶¶ 59-62. Despite being the "most qualified and experienced applicant for these positions," Plaintiff was never notified of their availability. <u>Id.</u> ¶¶ 63-65. The two positions were filled by Matt Housch, "an employee in his twenties," and Kathryn Gilsonl, "an employee in her thirties." <u>Id.</u> ¶¶ 66-67. Both Housch and Gilsonl had less experience than Plaintiff.[6] <u>Id.</u> ¶¶ 68-69.

---

[6] Plaintiff alleges that in addition to promotions, younger employees had their graduate degrees paid for and were "promised" internal promotions upon completion of their schooling. Am. Compl. ¶¶ 84-88. Plaintiff was not offered the same opportunities. <u>Id.</u> ¶¶ 86, 88.

Following the decision not to promote Plaintiff to one of the two educational Park Ranger vacancies, Plaintiff was sent to "an early retirement meeting." Id. ¶ 80. Amato would "regularly make comments towards Plaintiff" that made it "clear that [Amato] wanted [Plaintiff] to retire early."[7] Id. ¶ 83. Plaintiff continued to work on Liberty Island without accommodation. Id. ¶ 89. "Throughout this time," Plaintiff "regularly complained to his supervisors" about the "discriminatory treatment he was receiving" due to his age and disability.[8] Id. ¶ 94. His supervisors did not take any actions in response to his complaints.[9] Id. ¶ 95.

On January 10, 2020, Plaintiff received notice of a 14-day suspension.[10] Id. ¶ 98. Through that notice, Plaintiff learned that he was being investigated for a complaint made by Jennifer Sheron, involving an incident that occurred in January 2019, during which Sheron "harassed" him and "screamed at him in front of customers." Id. ¶¶ 99-100. Plaintiff responded by calling Sheron "stupid." Id. ¶ 101. Plaintiff was investigated for his conduct, whereas no action was taken against Sheron, who initiated the exchange. Id. ¶ 102. The suspension notice that Plaintiff received states that Sheron's complaint "was dismissed on March 14, 2019." Id.

---

[7] Plaintiff does not identify any specific comment made by Amato towards him.

[8] Plaintiff provides no dates for the timing of these complaints.

[9] In September 2019, Shaver shredded documents that Plaintiff had been printing in order to file an internal complaint of discrimination. Am. Compl. ¶ 79.

[10] Plaintiff's amended complaint states that the notice was from January 10, 2010. Am. Compl. ¶ 98. Defendants point out that the notice was dated January 10, 2020. Def's Br. at 4 n.3. Given the timeline of the other events detailed in the amended complaint, including the date of the incident involving Sheron in 2019, the 2010 date appears to be a typographical error by Plaintiff.

¶ 103. Plaintiff was "disciplined costing him five days['] pay." Id. "[S]hortly thereafter in early 2020," Plaintiff filed a discrimination complaint.[11] Id. ¶ 104.

Prior to commencing this suit, Plaintiff "filed an internal complaint of discrimination" on April 6, 2020. Id. ¶ 8. Plaintiff received a determination related to that complaint on September 17, 2020. Id. ¶ 9. Plaintiff did not appeal that determination, instead commencing this action. Id.

**B. Procedural Background**

Plaintiff commenced this action on December 16, 2020, alleging violations of the ADEA, Title VII, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq. Compl. ¶¶ 1, 107-157. Defendants filed an answer to the complaint on October 4, 2021. ECF No. 15. The Court granted Plaintiff leave to file an amended complaint on November 15, 2021. ECF No. 20.

On November 30, 2021, Plaintiff filed an amended complaint, substituting two of causes of action under the Rehabilitation Act for two causes of action under the ADA; the factual allegations and other causes of action remained the same. Compare Compl. ¶¶ 107-16 (First and Second Causes of Action), with Am. Compl. ¶¶ 106-15 (First and Second Causes of Action). The amended complaint includes six causes of action: (1) a hostile work-environment claim under the Rehabilitation Act based on Plaintiff's disability (Am. Compl. ¶¶ 106-10);[12] (2) a claim under the Rehabilitation Act for unlawful retaliation against Plaintiff based on his complaints of

---

[11] Plaintiff does not provide a specific date for the filing of this complaint.

[12] Although the caption for Plaintiff's first cause of action states that this claim under the Rehabilitation Act is for "hostile work environment and discrimination," the underlying allegations state only that "Defendant violated the [Rehabilitation Act] when it subjected Plaintiff to a hostile work environment based on his disability." Compare Am. Compl. First Cause of Action Caption p. 12 with Am. Compl. ¶ 108.

discriminatory treatment (id. ¶¶ 111-15); (3) an employment-discrimination claim under Title

VII based on Plaintiff's age and disability (id. ¶¶ 116-24); (4) a retaliation claim under Title VII

for Plaintiff's complaints of discrimination (id. ¶¶ 125-33); (5) an age-discrimination claim under

the ADEA (id. ¶¶ 134-44); and (6) a retaliation claim under the ADEA based on Plaintiff's

complaints of age discrimination (id. ¶¶ 145-56).[13]

On December 20, 2021, Defendants moved to dismiss certain claims in the amended

complaint. ECF Nos. 25-26. Defendants seek to dismiss: (1) Plaintiff's third and fourth causes of

action under Title VII, because Plaintiff has failed to state a plausible claim of discrimination and

retaliation; (2) Plaintiff's second, fifth, and sixth causes of action, alleging discrimination and

retaliation under the ADEA and Rehabilitation Act, to the extent those claims rely on conduct

that occurred before July 2019, because Plaintiff failed to exhaust his administrative remedies;

and (3) Plaintiff's first cause of action, alleging a hostile work-environment claim under the

Rehabilitation Act, because Plaintiff's allegations do not plausibly state a claim. Defendants also

seek to dismiss all six causes of action as alleged against DOI, because the agency is not a proper

defendant. Finally, Defendants contend that to the extent any of Plaintiff's claims concern a

failure to promote in 2014, the claim should be dismissed as untimely.

In support of their motion to dismiss, Defendants submitted certain documents related to

Plaintiff's prior complaints to the Equal Employment Opportunity ("EEO") counselor: (1) an

acceptance letter from the National Park Service of Plaintiff's formal EEO complaint, dated

August 20, 2013; (2) Plaintiff's withdrawal of his 2013 formal EEO complaint; (3) an order

---

[13] The caption for Plaintiff's sixth cause of action states that it is for "retaliation violation of ADEA/[Rehabilitation Act]." See Am. Compl. Sixth Cause of Action Caption p. 16. However, Plaintiff refers only to the ADEA in the allegations underlying this claim. See Am. Compl. ¶¶ 153-54.

issued by an EEOC administrative judge, dated April 1, 2016, regarding one of Plaintiff's formal

complaints; (4) Plaintiff's formal EEO complaint of discrimination, dated October 6, 2019; (5)

the acceptance letter, dated February 11, 2020, from the National Park Service concerning

Plaintiff's October 2019 complaint; and (6) the final agency decision, dated April 14, 2021,

issued by the DOI's Office of Diversity, Inclusion and Civil Rights, regarding Plaintiff's October

2019 complaint. See Decl. of David E. Farber ("Farber Decl.") ¶¶ 2-7, ECF No. 28. Defendants

submit these documents in support of their argument that Plaintiff failed to administratively

exhaust his claims in a timely manner. Def's Br. at 9-10.

Plaintiff opposed the motion on February 25, 2022. See Pl.'s Br., ECF No. 37. Plaintiff

contends that the documents relied on by Defendants cannot be considered on this motion to

dismiss as proof that he failed to exhaust his administrative remedies. See Pl.'s Br. at 8.

Defendants submitted a reply brief on March 28, 2022. Def's Reply Br., ECF No. 39. On May 4,

2022, the parties consented to the undersigned's jurisdiction for all purposes pursuant to 28

U.S.C. § 636. ECF No. 44.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green

v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation

omitted). In determining if a claim is sufficiently plausible to withstand dismissal, a court must

accept all factual allegations in the complaint as true and draw all reasonable inferences in the

10

plaintiff's favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007);

<u>Tellabs, Inc. v. Makor Issues & Rts., Ltd.</u>, 551 U.S. 308, 322, 324 (2007). However, a court does

not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of

action." <u>Iqbal</u>, 556 U.S. at 678. The court's function on a motion to dismiss is "not to weigh the

evidence that might be presented at a trial but merely to determine whether the complaint itself is

legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).

**DISCUSSION**

**A.  Plaintiff has failed to plead claims under Title VII.**

Plaintiff asserts two causes of action under Title VII, alleging that he was discriminated

against because of his age and disability and retaliated against due to his complaints of

discrimination. <u>See</u> Am. Compl. ¶¶ 117-23 (Third Cause of Action), 126-32 (Fourth Cause of

Action). Defendants argue that claims under Title VII must be premised on discriminatory

conduct that is based on race, color, religion, sex, or national origin. Def's Br. at 14-15.

Defendants are correct.

"Title VII of the Civil Rights Act of 1964 . . . 'prohibits employment-related

discrimination on the basis of race, color, religion, sex, or national origin and retaliation against

employees who complain about discrimination.'" <u>Tassy v. Buttigieg</u>, 51 F.4th 521, 529 (2d Cir.

2022) (quoting <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 74 (2d Cir. 2008)); <u>see also</u> <u>Moore v. City</u>

<u>of New York</u>, No. 15-CV-4578 (KPF), 2016 WL 3963120, at *6 (S.D.N.Y. July 21, 2016) (citing

42 U.S.C. § 2000e-2(a)(1)). Title VII, however, does not bar discrimination based on disability.

<u>See</u> <u>Moore</u>, 2016 WL 3963120, at *6 (dismissing Title VII claim where Plaintiff "alleges

discrimination solely on the basis of disability, and makes no claims involving any of the

11

protected classes that are within the scope of Title VII"); Risco v. McHugh, 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012) ("Title VII does not prohibit discrimination on the basis of disability.").

Nor does Title VII bar discrimination based on age. See Triola v. ASRC Mgmt. Servs., 487 F. App'x 611, 613 (2d Cir. 2012) (summary order) ("The district court correctly held that [plaintiff's] retaliation claim based on his prior age discrimination complaint was not cognizable under Title VII"); Bornholdt v. Brady, 869 F.2d 57, 62 (2d Cir. 1989) (noting that Title VII does not apply to claim based on age-discrimination complaints "since that statute governs complaints relating only to discrimination on the basis of race, color, religion, sex, or national origin, and not discrimination on the basis of age").

Both of Plaintiff's Title VII claims are premised solely on allegations that he was discriminated against by Defendants because of his foot injury, age, or both. Am. Compl. ¶¶ 4, 34-36, 117-18, 122, 126-27. Plaintiff raises no allegations concerning discrimination due to race, color, religion, sex, or national origin. Plaintiff has thus failed to state a claim under Title VII. Accordingly, Plaintiff's third and fourth causes of action, asserting claims under Title VII, are dismissed with prejudice.

**B. The Department of the Interior is not a proper party to this action.**

In his amended complaint, Plaintiff names both the DOI and the Secretary of the Interior as defendants. As Defendants correctly note, the agency is not a proper defendant in a suit for employment discrimination under either the ADEA or Rehabilitation Act. Def's Br. at 15. A plaintiff "cannot sue an agency" for employment discrimination under "the Rehabilitation Act and the ADEA" and must instead "name the agency head as the defendant." McDonald v. United States Postal Serv., No. 08-CV-4936 (RJD) (LB), 2009 WL 10706724, at *1 n.2 (E.D.N.Y. Oct. 14, 2009); see also Torres v. U.S. Dep't of Veteran Affs., No. 02-CV-9601 (HBP), 2004 WL

12

691237, at *2 (S.D.N.Y. Mar. 31, 2004) (concluding that the agency head was proper defendant in employment-discrimination action under the Rehabilitation Act and the ADEA); Nobriga v. Dalton, No. 94-CV-1972 (SJ), 1996 WL 294354 at *2 (E.D.N.Y. May 28, 1996) ("The Rehabilitation Act permits only the head of a government agency to be sued, but not the agency itself or its lower-level federal employees."); Edinboro v. Dep't of Health & Human Servs., 704 F. Supp. 364, 365 (S.D.N.Y. 1988) (same); Thomas v. Dep't of Veterans Affs., No. 05-CV-5348 (LAK) (THK), 2006 WL 1636738, at *6 (S.D.N.Y. Apr. 3, 2006), report and recommendation adopted, 2006 WL 1594481 (S.D.N.Y. June 6, 2006) (noting that for ADEA claims, "the weight of authority holds that the head of the federal agency is the only proper defendant").

Plaintiff's remaining claims are under the ADEA (Am. Compl. ¶¶ 134-56) and Rehabilitation Act (id. ¶¶ 106-15). The proper defendant for those claims is Debra Haaland, the current Secretary of the Interior. See Fed. R. Civ. P. 25(d). Plaintiff's ADEA and Rehabilitation Act claims, as alleged against DOI, are dismissed with prejudice.

### C. The Court cannot take judicial notice of the contents of the administrative documents relied on by Defendants.

Plaintiff's second cause of action alleges that Defendants violated the Rehabilitation Act by retaliating against him for complaints of discrimination. See Am. Compl. ¶¶ 111-15. Plaintiff's fifth and sixth causes of action allege claims under the ADEA, for disparate treatment based on Plaintiff's age and retaliation for complaints of age discrimination.[14] Id. ¶¶ 134-138, 140-156. For all three of these claims, Defendants argue that Plaintiff failed to exhaust his

---

[14] Plaintiff's fifth cause of action also appears to assert a hostile work-environment claim under the ADEA and Rehabilitation Act. Am. Compl. ¶ 139.

administrative remedies in a timely manner and thus the claims are time-barred to the extent they rely on conduct that occurred before July 2019. See Def's Br. at 9-12; Def's Reply Br. at 2-3.

Exhaustion of administrative remedies is a precondition to a civil suit under the Rehabilitation Act and the ADEA. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001) (ADEA); Downey v. Runyon, 160 F.3d 139, 145-46 (2d Cir. 1998) (Rehabilitation Act); see also Marinelli v. Chao, 222 F. Supp. 2d 402, 410-11 (S.D.N.Y. 2002); Malloy v. Pompeo, Nos. 18-CV-4756 and 19-CV-6533 (PGG), 2020 WL 5603793, at *10 (S.D.N.Y. Sept. 18, 2020) (citation omitted). To exhaust a claim, a plaintiff must have properly reported the underlying incident to the EEOC. Marinelli, 222 F. Supp. 2d at 411. Federal Regulations require that incidents of alleged discrimination be reported to the EEOC within 45 days of their occurrence. See id.; 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."). The failure to exhaust "administrative remedies is an affirmative defense," for a defendant to raise and thus does not need to be pled by the plaintiff in the complaint. See Ross v. Dep't of the Army, US Army Rsrv., No. 21-CV-6239 (LTS), 2021 WL 4804100, at *3 (S.D.N.Y. Oct. 12, 2021); Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018) (holding that "that the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense").[15]

---

[15] The failure to exhaust administrative remedies is an affirmative defense, to be pled by a defendant, whether the plaintiff's claim is under Title VII, the ADEA, or the Rehabilitation Act. See Williams v. N.Y.C. Dep't of Educ., No. 17-CV-1996 (AJN), 2018 WL 4735713, at *5 (S.D.N.Y. Sept. 29, 2018) (citing Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003)) ("Because the administrative exhaustion requirement is the same under the ADEA as it is under [Title VII], the same burden allocation applies to ADEA cases.") (quotation marks omitted); Le Prevost v. New York, No. 03-CV-2544 (CBM), 2004 WL 32860, at *8 (S.D.N.Y. Jan. 6, 2004) ("The

Defendants argue that Plaintiff first initiated contact with an EEO counselor on August 27, 2019. Def's Br. at 11. That date is not pled by Plaintiff in the amended complaint. Instead, Defendants point to the final agency decision, dated April 14, 2021, which was issued by DOI in connection with Plaintiff's October 6, 2019 complaint of discrimination. See Farber Decl. Ex. 4, ECF No. 28-4. In the DOI's decision, it states that Plaintiff "made initial contact with the EEO Counselor" on August 27, 2019. Id. at 2. Because federal regulations require that Plaintiff have initiated contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory, Defendants argue that any alleged conduct relied on by Plaintiff that occurred more than 45 days before August 27, 2019, is barred due to a failure to exhaust administrative remedies. Def's Br. at 11. In other words, Defendants contend that conduct that occurred before July 13, 2019, cannot be used by Plaintiff to support claims of discrimination and retaliation under the ADEA and Rehabilitation Act. Def's Br. at 11; Def's Reply Br. at 2-3.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). On a motion to dismiss, a court may consider material extraneous to a complaint: (1) when a document is "integral" to the complaint, see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); or (2) when judicial notice may be taken pursuant to Federal Rule of Evidence 201, see Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991); Gray v. Wesco Aircraft Holdings, Inc., 454 F. Supp. 3d 366, 382 (S.D.N.Y. 2020). A document is "integral" to the complaint when plaintiff "rel[ies] on

Second Circuit Court of Appeals has held, with respect to a Rehabilitation Act claim, that 'the exhaustion requirement, while weighty, is not jurisdictional.'") (quoting Boos v. Runyon, 201 F.3d 178, 182 (2d Cir. 2000)).

the terms and effect of a document in drafting the complaint"; "mere notice or possession is not enough." <u>Chambers</u>, 282 F.3d at 153.

Here, the final agency decision relied on by Defendants was not discussed or referenced by Plaintiff in the amended complaint. The agency decision also was not annexed to Plaintiff's amended complaint. Nor does Plaintiff discuss in his amended complaint when he contacted an EEO counselor. There thus is no indication that the agency decision was a document relied upon by Plaintiff in drafting his amended complaint. <u>See</u> <u>Chambers</u>, 282 F.3d at 153. The agency decision is therefore not a document that is integral to Plaintiff's amended complaint.

Federal Rule of Evidence 201 also permits a court to take judicial notice of material extraneous to a complaint. <u>See</u> <u>Bamba v. U.S. Dep't of Homeland Sec.-FPS</u>, No. 19-CV-8646 (LJL), 2021 WL 4478677, at *5 (S.D.N.Y. Sept. 30, 2021). Under that rule, a court can take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." <u>Id.</u> (quoting Fed. R. Evid. 201). Pursuant to Rule 201, a court "may take judicial notice of the fact of public records, such as prior adjudications or other publicly available information." <u>Id.</u> However, the records may be accepted "not for the truth of the assertions they contain, but instead and solely for the fact that the filings were made and when they were made." <u>Id.</u>; <u>see also</u> <u>Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.</u>, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (quotation marks and citation omitted).

Rule 201 does not save Defendants' argument, because they are not asking the Court to consider the final agency decision solely for the fact that it was issued and the timing of its issuance. Instead, Defendants ask the Court to take judicial notice of the final agency decision for the truth of its contents. See Def's Br. at 11-12. More specifically, Defendants want the Court to rely on the content of the agency decision to establish the date on which Plaintiff contacted an EEO counselor, August 27, 2019. Id. On a motion to dismiss, relying on the final agency decision "for its content [would be] error." Bamba, 2021 WL 4478677, at *6 ("Although the Court had the authority to take notice of the EEOC complaint for its existence and its timing, that authority did not reach to taking notice of it for its content."); Jeanty v. Newburgh Beacon Bus Corp., No. 17-CV-9175 (CS), 2018 WL 6047832, at *4 (S.D.N.Y. Nov. 19, 2018) (explaining that courts may take judicial notice of documents in public record but not to establish the truth of the matters asserted therein).

In short, the Court cannot take judicial notice of the final agency decision for purposes of establishing the date upon which Plaintiff contacted the EEO counselor. And because it is not apparent from the face of Plaintiff's amended complaint that Defendants have an affirmative defense of failure to exhaust administrative remedies, that issue cannot be resolved on a Rule 12(b)(6) motion to dismiss.[16]

---

[16] Defendants alternatively request that the Court convert the instant motion to a motion for summary judgment. Def's Reply Br. at 2 n.2. The Court declines to do so in light of Plaintiff's objection and request for discovery. Pl.'s Br. at 8, 10-11. See Belyea v. City of Glen Cove, No. 20-CV-5675 (MKB), 2022 WL 3586559, at *7 (E.D.N.Y. Aug. 22, 2022) (declining to convert motions to dismiss into motions for summary judgment "in light of Plaintiff's request for the parties to conduct discovery and submit additional materials."); Osby v. City of New York, No. 13-CV-8826 (TPG), 2016 WL 4372233, at *3 (S.D.N.Y. Aug. 15, 2016) (declining to convert motion to dismiss to motion for summary judgment "since discovery has not commenced").

**D. Plaintiff has failed to allege a plausible hostile work-environment claim under the Rehabilitation Act or ADEA.**

In his first cause of action, Plaintiff asserts that Defendants violated the Rehabilitation Act by subjecting him to a hostile work environment based on his disability. Am. Compl. ¶ 108. The Rehabilitation Act "incorporates the standards of the [ADA]."[17] Cheung v. Donahoe, No. 11-CV-122 (ENV) (RLM), 2016 WL 3640683, at *5 (E.D.N.Y. June 29, 2016); see also Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999) (considering ADA and Rehabilitation Act claims "in tandem" because "Section 504 of the Rehabilitation Act and the ADA impose identical requirements"). The Second Circuit, however, "has not yet decided whether a hostile work environment claim may be made" under the ADA, and by extension, the Rehabilitation Act. Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 586 F. App'x 739, 745 n.2 (2d Cir. 2014) (summary order); see also Lee v. Saul, No. 19-CV-6553 (PGG) (SN), 2020 WL 7029264, at *5 (S.D.N.Y. Aug. 31, 2020), report and recommendation adopted as modified, 2020 WL 5836513 (S.D.N.Y. Sept. 30, 2020). For purposes of resolving the instant motion, the Court assumes that a hostile work-environment claim is actionable under the Rehabilitation Act. See Lee, 2020 WL 7029264, at *5; Kelly, 200 F. Supp. 3d at 399. Plaintiff also appears to be raising a hostile work-environment claim in his fifth cause of action, under both the ADEA and Rehabilitation Act. See Am. Compl. ¶ 139.

The standards for pleading a hostile work-environment claim under the ADEA and Rehabilitation Act are similar. See Leftridge v. N.Y.C. Dep't of Educ., No. 17-CV-7027 (WHP),

---

[17] The two statutes differ in only one significant way: "the Rehabilitation Act, unlike the ADA, requires that the alleged discrimination take place 'solely due to an individual's disability.'" Kelly v. N.Y. State Office of Mental Health, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) (quoting Amie v. Shinseki, 806 F. Supp. 2d 641, 644 (W.D.N.Y. 2011)) (emphasis omitted).

18

2020 WL 1503665, at *11 (S.D.N.Y. Mar. 30, 2020). Beginning with the ADEA, "[w]ith respect to an individual over the age of 40, the ADEA makes it unlawful for an employer to discriminate against [the] individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." Zoulas v. New York City Dep't of Educ., 400 F. Supp. 3d 25, 59 (S.D.N.Y. 2019) (citation omitted) (alterations in original). The ADEA prohibits "requiring people to work in a discriminatorily hostile or abusive environment." Id. (citation omitted). Under the ADEA, "'[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it' because of conduct based on the plaintiff's over-40 age." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 41 (2d Cir. 2019) (quoting Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999)).

To "state a claim for hostile work environment in violation of the ADEA, the plaintiff must plausibly allege that the workplace is 'permeated with discriminatory intimidation, ridicule and insult that it is sufficiently pervasive to alter the conditions of the victim's employment.'" Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 722 (E.D.N.Y. 2015) (quoting Kassner v. 2nd Avenue Delicatessen, 496 F.3d 229, 240 (2d Cir. 2007)). While a plaintiff "need not present a list of specific acts[,]" "[m]inor incidents do not merit relief." Kassner, 496 F.3d at 241; see also Davis-Garett, 921 F.3d at 41 ("Isolated, minor acts or occasional episodes do not warrant relief."). The acts must be "sufficiently continuous and concerted to be considered pervasive." Kassner, 496 F.3d at 241. An inquiry into whether a work environment is hostile under the ADEA requires an assessment based on the totality of the circumstances. Lopez v. New York City Dep't of Educ., No. 17-CV-9205 (RA), 2019 WL 2647994, at *4 (S.D.N.Y. June 26, 2019) (internal citation and quotation marks omitted). "In determining whether a plaintiff

meets the 'severe or pervasive' standard, courts must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with a plaintiff's job performance." Harewood v. New York City Dep't of Educ., No. 18-CV-05487 (KPF) (KHP), 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019), report and recommendation adopted, 2019 WL 2281277 (S.D.N.Y. May 29, 2019) (quoting Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)).

Like the ADEA, a plaintiff stating a claim for a hostile work environment under the Rehabilitation Act must similarly "show that his workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions' of the [plaintiff's] employment and create an abusive working environment." Lee, 2020 WL 7029264, at *5 (cleaned up, citations omitted). A plaintiff must "plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected class]." Lee, 2020 WL 7029264, at *5 (quotations omitted) (alteration in original).

Plaintiff's allegations underlying his hostile work-environment claim predominately concern one supervisor, Amato. Plaintiff alleges that Amato laughed at him in his office and said that he could not "picture" Plaintiff as a supervisor. Am. Compl. ¶ 40. Plaintiff further alleges that Amato on "numerous occasions" would "stare at Plaintiff from a distance," refusing to speak to Plaintiff and making Plaintiff feel uncomfortable. Id. ¶¶ 72, 74; see also id. ¶¶ 77-78. Additionally, Amato, "after seeing Plaintiff taking a picture of him," yelled at Plaintiff in front of

patrons, "for taking the picture." Id. ¶ 76. Mike Shaver, another one of Plaintiff's supervisors,

used "the same tactics on Plaintiff numerous times," including in September 2019. Id. ¶ 78. Also

in September 2019, Shaver shredded documents that Plaintiff had been printing in order to file an

internal discrimination complaint. Id. ¶ 79. Plaintiff also claims that Jennifer Sheron, a friend of

Amato and a fellow Park Ranger, screamed at him in front of customers. Id. ¶¶ 99-100.

Viewed collectively, Plaintiff's allegations do not concern sufficiently severe or

pervasive conduct to have altered the conditions of his employment. Incidents occurring

infrequently are generally not considered "severe." Alfano v. Costello, 294 F.3d 365, 374 (2d

Cir. 2002) ("As a general rule, incidents must be more than episodic; they must be sufficiently

continuous and concerted in order to be deemed pervasive.") (quotation omitted). Although

Plaintiff does not allege the frequency of any particular act of harassment, his allegations point to

a handful of sporadic, isolated incidents that involve staring, laughing, and yelling. Such conduct

is too infrequent and insufficiently severe to create a hostile work environment. See Brown v.

New York City Dep't of Educ., No. 20-CV-2424 (VEC) (OTW), 2022 WL 6559760, at *7

(S.D.N.Y. Sept. 1, 2022), report and recommendation adopted, 2022 WL 4364600 (S.D.N.Y.

Sept. 21, 2022) (dismissing hostile work-environment claims under ADEA and Rehabilitation

Act where "incidents of conflict between [p]laintiff and her superiors [were] sporadic,

spontaneous, outbursts of aggression and bickering"); Mabry v. Neighborhood Def. Serv., 769 F.

Supp. 2d 381, 396 (S.D.N.Y. 2011) (dismissing hostile work-environment claim under ADEA

where allegations "merely evidence[d] a personality conflict" between plaintiff and his

supervisor and concerned "isolated incidents of workplace conflict unrelated to plaintiff's age").

Plaintiff's other allegations, concerning a failure to promote and accommodate his

disability, even when construed together with Plaintiff's allegations of staring, laughing, and

yelling, are still insufficient to plausibly allege a claim of hostile work environment. In that

regard, Plaintiff alleges that Amato was trying to force him to retire early by sending him to an

early retirement meeting and refusing to transfer him to Ellis Island. Am Compl. ¶¶ 80-83, 105.

Plaintiff also alleges that, despite being "the most qualified and experienced applicant" for

various promotion positions, he was never promoted. Id. ¶¶ 16-33, 60-71. And, with regards to

his foot injury, Plaintiff alleges that his supervisors refused to accommodate his injury, despite

having provided a doctor's note. Id. ¶¶ 47-50. Even when all of Plaintiff's allegations are

considered, the alleged behavior falls well short of pleading sufficiently severe and pervasive

conduct to plausibly allege a claim of hostile work environment. See Perkins v. United States

Dep't of the Treasury, No. 18-CV-08911 (NSR), 2022 WL 19772, at *15-16 (S.D.N.Y. Jan. 3,

2022) (dismissing hostile work-environment claims under Title VII, the ADEA, and the

Rehabilitation Act where plaintiff's allegations, "including hostility and unfairness from

supervisors," were too "isolated and sporadic" to show a "pervasive work environment.");

Trachtenberg v. Dep't of Educ. of City of N.Y., 937 F. Supp. 2d 460, 472-73 (S.D.N.Y. 2013)

(allegations that plaintiff received "excessive scrutiny," her supervisor "frequently" stared at

plaintiff to intimidate her, she received negative performance evaluations and "scurrilous

charges" from her supervisor, was transferred to a windowless office, and refused training

opportunities, were not sufficiently severe and pervasive conduct); see also De Figueroa v. New

York, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) ("Isolated incidents or 'episodic' stray

remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'")

(citation omitted).

      As such, Plaintiff's first cause of action, alleging the existence of a hostile work

environment under the Rehabilitation Act, is dismissed. Further, Plaintiff's fifth cause of action

appears to also be raising a hostile work-environment claim under the ADEA, along with a claim of disparate treatment due to age. Moving forward, Plaintiff's fifth cause of action under the ADEA will be construed as raising solely a disparate-treatment claim.

**E.  Plaintiff is granted leave to file a second amended complaint.**

To state a claim under the Rehabilitation Act, a plaintiff "must sufficiently allege that [he] is disabled within the meaning of the Rehabilitation Act." Kelly, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016). The Rehabilitation Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B); see also Kelly, 200 F. Supp. 3d at 391. To establish that he suffers from an actual disability, a plaintiff must "(1) show that he suffers from a physical or mental impairment; (2) identify an activity claimed to be impaired and establish that it constitutes a major life activity; and (3) show that his impairment substantially limits the major life activity." Sternkopf v. White Plains Hosp., No. 14-CV-4076 (CS), 2015 WL 5692183, at *5 (S.D.N.Y. Sept. 25, 2015); Kelly, 200 F. Supp. 3d at 391.

Plaintiff claims that he is disabled but does not specify the nature of his disability, nor does he provide any details about his foot injury. Moreover, Plaintiff does not identify a major life activity that is substantially limited as a result of his disability. Although Plaintiff alleges that working in November 2018 exacerbated his foot injury, which resulted in him being "barely able to walk," see Am. Compl. ¶¶ 37-39, 45-46, it is not apparent from the allegations in the amended complaint whether Plaintiff's inability to walk persisted or was temporary. Plaintiff also alleges that he suffers from PTSD and severe anxiety. See id. ¶¶ 14, 39. Anxiety may qualify as a disability, see Kelly, 200 F. Supp. 3d at 391, but Plaintiff does not explain how his anxiety

substantially impairs a major life activity, as is required to plead the existence of a disability. In short, Plaintiff is granted leave to file an amended complaint, adequately alleging the existence of a disability to support his claim under the Rehabilitation Act in his second cause of action. Further, should Plaintiff have additional facts to adequately plead his hostile-work environment claim, Plaintiff is permitted to add those factual allegations and replead his first and fifth causes of action in his amended complaint.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED** in part. Plaintiff's third and fourth causes of action in the amended complaint are dismissed with prejudice. The United States Department of the Interior is dismissed as a defendant in this action. Plaintiff's first cause of action, alleging a hostile work-environment claim, is dismissed. Plaintiff is given leave to file an amended complaint consistent with this decision. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 25.

**SO ORDERED.**

DATED:      New York, New York
            March 10, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge