UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

......................................................................................................x

DAVID McCUTCHEON

Docket No:     1:20-cv-10616

**SECOND AMENDED
COMPLAINT**

Plaintiff,

-against-                                                          **JURY DEMAND**

DEBRA HAALAND, SECRETARY OF THE UNITED
STATES DEPARTMENT OF INTERIOR

Defendants.

......................................................................................................x

The plaintiff, DAVID McCUTCHEON  (hereinafter "Plaintiff") by his attorneys the LAW

OFFICE OF JOHN A. SCOLA, PLLC., allege the following upon information and belief, against

DEBRA HAALAND, as SECRTARY OF THE UNITED STATES DEPARTMENT OF INTERIOR,

as follows:

## NATURE OF THE ACTION

This is an action for compensatory, emotional and punitive damages to redress the past and future

deprivation of rights secured to Plaintiff by the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. §621 et seq., and Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1994)

("RA").

## JURISDICTION AND VENUE

1.  The Court has original jurisdiction over this matter pursuant to 42 U.S.C. §2000e-5(f)(3), 28

    U.S.C. §§ 1331 and 1343 (3), because the matters in controversy arise under the Constitution

    and laws of the United States and this is an action to recover damages or secrete equitable or

    other relief under Acts of Congress providing the protection of civil rights including Title VII

    of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq., and the

    Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 et seq.  and

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1994) ("RA").

2. The Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 29 USC §1367 because those claims are so related to the Plaintiff's civil rights claims, over which this Court has original jurisdiction, that they form part of the same case and controversy under Article III of the United States Constitution and judicial economy, convenience and fairness to the parties names herein will result through this Court's exercise of supplemental jurisdiction over those claims.

3. Venue is properly placed in the Southern District of New York under 28 U.S.C.§1391(b) and 42 U.S.C. 2000e-5(f)(3) where Plaintiff was employed in the Defendants New York field office and a substantial part of the events giving rise to this claim arose in this district and records relevant to the practices complained of herein are located in this district.

## PARTIES

4. Plaintiff is a male citizen of the United States and a resident of the State of New York, and is subject to the jurisdiction of this Court. Plaintiff was at all times relevant an employee of the Defendant, the United States Department of Interior.  Plaintiff was born on June 25, 1960.

5. The Defendant DEBRA HAALAND is the Secretary of the United States Department of Interior, and he is the current head of the Department which at all relevant times herein employed the Plaintiff. Secretary Barnhardt is being sued in his official capacity only.

## ADMINISTRATIVE PROCEDURES AND CONDITION PRECEDENT TO SUIT UNDER TITLE VII, THE ADEA/RA and RA

6. The Plaintiff has fulfilled all precedent conditions necessary to the institution of this action under the ADEA/RA by exhausting all of his administrative remedies.

7. Plaintiff filed an internal complaint of discrimination on or about April 6, 2020.

8. Plaintiff received a determination related to that Complaint on September 17, 2020. As a

result of that decision Plaintiff has elected not to file an appeal and elect to pursue this federal action.

9.  This suit has been commenced within 90 days of the receipt of the Agency decision related to Plaintiff's complaint of internal complaint of discrimination.

## ALLEGATIONS OF FACT

10. Plaintiff  began working for the National Parks Service on July 15, 1990.

11. Plaintiff was assigned to the New York City office where he was assigned to the Statute of Liberty and Ellis Island Parks as a Park Ranger.

12. Plaintiff worked as a Park Ranger from 1990 to 2013 without incident.

13. Plaintiff following the terrorist attack on September 11, 2001 suffered from post-traumatic stress disorder ("PTSD").

14. Plaintiff was commended for his work performance during this time and always received above average evaluations.

15. As a result of his PTSD and anxiety diagnosis Plaintiff is disabled

16. The initial condition was triggered through the events of September 11, 2001 when Plaintiff was on a boat to Liberty Island when he witnessed one of the planes fly into the World Trade Center.

17. Plaintiff then watched in horror as people jumped to their deaths, the buildings collapsed, the fire, chaos, and dust cloud/

18. Plaintiff has engaged in counseling to assist with his PTSD and Anxiety.

19. Plaintiff's disability related to his PTSD and Anxiety impact his daily life.

20. Plaintiff as a result of his PTSD and Anxiety causes him to be restless, sleepless, anxious, feel nervous and tired.

21. Further Plaintiff's PTSD and Anxiety causes Plaintiff to suffer chest pain, physical symptoms of shaking, flash backs and memory loss.

22. Plaintiff's PTSD and anxiety, and the adverse effects these conditions have on Plaintiff's life, continue to date.

23. From 2013 until the present date, Plaintiff would regularly inform supervisors that he would like to be considered for promotion.

24. As such Plaintiff applied for numerous promotional positions from 2013 until the present date.

25. Plaintiff was qualified for each position he applied as he had over twenty (20) years with the Parks Service and an unblemished record as a Park Ranger.

26. From 2013 until the present date, Plaintiff was repeatedly passed over for promotion despite being recommended for promotion and having more experience than the employees who ultimately were chosen for the promotional positions.

27. The candidates chosen for said positions often were under the age of 40 at the time of their appointment and had less experience than Plaintiff.

28. Plaintiff continued to pursue promotional opportunities and vocalizing his desire to be promoted.

29. In 2014, Plaintiff received a perfect score of 100 on his rating of qualified candidates for promotion, the highest of any candidate who sought promotion.

30. This list was subsequently thrown out for unknown reasons and a new promotional list was created.

31. The second certification list, failed to include Plaintiff who was never interviewed for a promotional position.

32. Under this second list, Michael Amato, Melissa Madnuson Cannady, Peter Wong and Ed Muchi were interviewed.

33. Plaintiff questioned the decision to exclude him and submitted a complaint to the Office of Equal Employment alleging discrimination.

34. Following the complaint by Plaintiff, a third certification list was created which included 16 additional candidates including Plaintiff.

35. All sixteen of the candidates on the third certification list were interviewed but the promotions were given to Michael Amato, Melissa Madnuson Cannady, and Peter Wong, all second certification members,  as the promotions had been predetermined.

36. It is common for management to hand pick employees for promotional opportunities.

37. This failure to follow internal protocol results in discriminatory application of promotional opportunities.

38. As a result the application process which is in place to ensure fairness in promotion, is more for show to avoid the appearance of the true discriminatory nature to the process.

39. Shortly after Amato was promoted to Supervisor, the Chief of the Interpretation retired and the position became vacant. Instead of announcing the vacancy on USA Jobs to fill this position, there were four separate individuals acting on this position until Amato was close to finish his one year probation period as a supervisor.

40. In less than one year, Amato was promoted from his first promotion as a supervisor to the second promotion as the Chief of the Interpretation, which the second was again a predetermined promotion.

41. Plaintiff suffered an injury to his left foot and ankle on November 4, 2018.

42. As a result of his injury Plaintiff could not walk and missed work for several days while

getting treatment for his injury.

43. Plaintiff was diagnosed initially with an injury to his left foot, ankle, and Achilles tendon region.

44. As the injury did not heal, Plaintiff was diagnosed with permanent Arthritic and Achilles tendonitis.

45. Upon information and belief, this disability became permanent due to the Defendants failure to accommodate Plaintiff.

46. The injury to Plaintiff's left foot was debilitating and adversely affected his daily life.

47. The impact to Plaintiff's day to day life include severe foot pain and soreness to Plaintiff's ankle and lower back.

48. The persistent pain towards Plaintiff greatly limit his daily activities as he is in constant pain.

49. This pain is exacerbated when he is forced to stand in the cold or when the weather is cold.

50. This impacts Plaintiff's daily activities including his ability to walk and work.

51. These debilitating effects continue to date.

52. On November 28, 2018, Plaintiff was transferred by his supervisor Michael Amato from Ellis Island, where Plaintiff had provided educational programs to the public as his primary job/duty station since September 2001, to Liberty Island where he was assigned mostly crowd work.

53. This new position forced Plaintiff to remain standing throughout his tour which exacerbated his foot injury.

54. Plaintiff informed Amato that he was disabled and still receiving treatment for his injured

foot. Further Amato was informed that the assignment to Liberty Island triggered severe anxiety related to the PTSD that he had from the September 11th attack.

55. Amato started laughing at Plaintiff in his office at Ellis Island in November 2018 and then said I cannot picture you as a supervisor.

56. Amato, true to his word, never promoted Plaintiff.

57. Amato ignored Plaintiff's request for a reasonable accommodation and forced Plaintiff to continue working on Liberty Island.

58. These were considered punishment posts by Plaintiff.

59. Plaintiff's long-standing posts on Liberty Island since November 28, 2018 in the cold elements has caused his injury to worsen each day.

60. After two weeks, Plaintiff was barely able to walk.

61. Plaintiff required extensive medical treatment through the end of the year.

62. Plaintiff's Doctor, Roy Siegel, drafted a letter to Plaintiff's employer on December 27, 2018 which stated " Mr. McCutcheon has been participating in a physical therapy program to help in the injury recovery and rehabilitation of his left foot/ankle. He was directed not to stand performing his usual duties especially during the period of December 26th and December 27th in order to not aggravate his condition. If you require additional information, please provide a signed authorization from the patient."

63. Following receipt of this letter, Plaintiff continued to be assigned to the long-standing foot posts on Liberty Island

64. Plaintiff was regularly assigned to the "6P Podium" and "Screening Site" assignments without heat sources or bathroom. Plaintiff would have to prearrange for coverage and approval for a bathroom break.

65. Despite the request for accommodation by Plaintiff through his doctor, he was only assigned an inside position which allowed him to sit for two hours from the date of his transfer through January 4, 2019.

66. On February 26, 2019, Plaintiff returned from furlough and was informed by managers Amato and Suzanne Rose McCoy that he was receiving an AWOL charge for seven (7) business days from December 19, 2018 until December 28, 2018.

67. In August/September 2018, Plaintiff requested leave at the end of the year like he had for several years prior where he was allowed said leave without incident.

68. The determination as to whether an employee is granted leave is normally based on seniority.

69. Plaintiff who was one of the most senior employees in the New York office should have been approved for the leave requested had been the case in the past.

70. During the time Plaintiff was out during the end of the year he received medical treatment for his foot on four of the seven missed work days and provided his employer with a note related to his treatment.

71. Plaintiff informed that on November 21, 2018 that he had been denied leave which was highly unusual since the time he was set to use was in an "use or lose" status.

72. Further, Plaintiff was the most senior employee so he would have been given top priority when requesting leave.

73. In August 2019, two Educational Ranger promotional opportunities became available.

74. Normally this type of promotional opportunity would result in an open position being posted on USA jobs where the qualifications for the position would be listed with the deadline for applying and all qualified employees would be notified.

75. The qualified employees, including Plaintiff, were not made aware in the way they would normally be.

76. For these vacant positions, normal protocols were not followed.

77. The two Educational Ranger positions were not made aware of to the staff including Plaintiff as was required by internal policies.

78. Plaintiff was the most qualified and experienced applicant for these positions but was never notified.

79. Plaintiff was particularly qualified for this role as he had been task with educating the public for over twenty five years.

80. Plaintiff had run educational programs on Ellis Island for many years.

81. The two positions were given to two younger employees.

82. Defendant gave one of the positions to Matt Housch, an employee in his twenties, and the other to Kathryn Gilsonl, an employee in her thirties.

83. Housch had previously worked as a seasonal ranger at Liberty Island but was promoted to a permanent full-time educational park ranger at Ellis with less experience than Plaintiff.

84. Gilsonl also had less experience than Plaintiff but was selected over him for the position.

85. The positions were predetermined.

86. Plaintiff was forced to continue his work at the Liberty Island under the order of Amato.

87. On numerous occasions, Amato would stare at Plaintiff from a distance at Liberty Island but refused to speak with him.

88. Amato did this in a way to try to intimidate Plaintiff.

89. On one occasion on August 2019, Plaintiff was working at the Liberty Island Touch Gallery Museum when he noticed Amato standing outside the window staring at him for nearly 10 minutes making Plaintiff extremely uncomfortable.

90. Plaintiff took a picture of Amato.

91. Amato after seeing Plaintiff taking a picture of him, stormed inside to yell at Plaintiff in front of patrons, for taking the picture.

92. The starring intimidation tactics were common amongst supervisors.

93. Supervisor Shaver implored the same tactics on Plaintiff numerous times and specifically in September 2019.

94. Also around that time Supervisor Shaver began shredding documents that Plaintiff had been printing to file his internal complaint of discrimination.

95. Following this decision not to promote Plaintiff, he was sent to an early retirement meeting which reflected the true feelings towards him by the Parks Service and his boss Amato.

96. The two educational Park Ranger Specialist positions filed at Ellis Island would give Amato a built in excuse to not let Plaintiff return to Ellis Island to do the educational programs which he had previously ran for decades.

97. Upon information and belief, Amato purposefully kept Plaintiff at Liberty Island following his complaints of PTSD to force Plaintiff to retire early from the Parks Service due to the anxiety it was causing.

98. Amato would regularly make comments towards Plaintiff making clear that he wanted him to retire early.

99. The favoritism towards younger employees was not limited to denial of promotional opportunities.

100.    Younger employees would be offered to have their master's degrees paid for by the Defendants.

101.    This was not offered to older employees.

102.    Younger employees would be promised that if they enrolled in the master's degree program which was paid for by the Defendant that they would be promoted internally upon completing their schooling.

103.    Older employees, including Plaintiff, were not offered this opportunity.

104.    During this time, Plaintiff continued to work on Liberty Island without accommodation.

105.    As a result of this transfer, Plaintiff was denied opportunities to work night events which were regularly held on Ellis Island.

106.    As a result, Plaintiff lost significant amounts of overtime pay which he had been provided with prior to his transfer.

107.    Upon information and belief, the transfer was done in retaliation for Plaintiff's complaints of discrimination.

108.    These overtime opportunities are regularly given to younger employees who have less seniority than Plaintiff.

109.    Throughout this time, Plaintiff regularly complained to his supervisors about the discriminatory treatment he was receiving as a result of his age and disability.

110.    These complaints fell on deaf ears and no actions were taken to rectify the discriminatory treatment.

111.    Despite being on notice that Plaintiff was disabled and seeking a reasonable accommodation, McCoy provided testimony during an Equal Employment investigation

on September 24, 2019 that she did not know that Plaintiff was still disabled and that his leave was previously denied because of a staffing shortage.

112.     McCoy further stated that subsequent to the charges being filed against Plaintiff for going AWOL, Plaintiff filed a grievance with his union and had his leave restored.

113.     Despite these statements that the AWOL complaint had been retroactively rescinded, Plaintiff received notice of a fourteen day suspension on January 10, 2010.

114.     In this notice Plaintiff first learned that he was being investigated for a bogus complaint made by fellow employee Park Ranger Jennifer Sheron one of the best friends of supervisor Mike Shaver.

115.     This complaint involved an alleged incident in January 2019, when Plaintiff was being harassed by Sheron who screamed at him in front of customers which is against protocol.

116.     Plaintiff responded, in private to Sheron calling her stupid in a moment of weakness following the beratement.

117.     Following the exchange, Plaintiff was investigated but no action was taken against Sheron who initiated and instigated the exchange.

118.     The fourteen day suspension letter clearly states that the complaint made by Sheron was dismissed on March 14, 2019 yet Plaintiff was still disciplined costing him five days pay.

119.     Plaintiff filed a discrimination complaint shortly thereafter in early 2020.

120.     It is clear to Plaintiff that he has been treated poorly by his supervisors in an effort to force him out of the Parks Service and to take early retirement.

**FIRST CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF RA**

121.    Plaintiff re-alleges all paragraphs to this complaint and incorporates them by reference as fully set forth herein.

122.    The RA prohibits an employer from retaliating against an employee because that employee has "opposed any act or practice" made unlawful under the RA.

123.    Plaintiff engaged in protected activity under the RA when he complained to Defendant about discriminatory treatment unlawful under the RA.

124.    Defendant violated the RA when it retaliated against Plaintiff for his complaints about discrimination.

125.    As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF ADEA

126.    Plaintiff re-alleges all paragraphs to this complaint and incorporates them by reference as fully set forth herein.

127.    Plaintiff is over 40 years of age.

128.    Plaintiff has more than thirty years' service with the National Parks Service.

129.    Plaintiff is one of the most senior and experienced employees with the National Parks Service and has received many outstanding performance awards.

130.    The Defendant has target Plaintiff with discriminatory actions of treating him differently than other similarly situated employees with respect to reassignment, assignment of duties, denial of promotion and terms of conditions in employment, all in an effort to force him to take early retirement.

131.     Defendant violated the ADEA/RA when it subjected Plaintiff to a hostile work environment based on his age.

132.     The Defendant has targeted Plaintiff with harassment and discrimination on account of his age in order to force him to retire and denied him promotional opportunities.

133.     Numerous of the promotional opportunities in which Plaintiff was qualified for and applied were given to younger employees, often under the age of 40, who were less qualified, had less experience and were less seniority and expertise than Plaintiff, and were not in the protected class status under the ADEA.

134.     Multiple positions as detailed throughout this complaint were given to younger employees, often under the age of 40, who were less qualified, had less experience and were less seniority and expertise than Plaintiff, and were not in the protected class status under the ADEA.

135.     The Defendants have also treated Plaintiff differently than younger employees, under the age of 40, who held lower positions than Plaintiff but were treated more favorably in terms of their ability to work substantial overtime, which was denied to Plaintiff.

136.     As a result of the Defendant's discriminatory actions and harassment, on account of his age and seniority, Plaintiff has suffered physical and emotional injury, mental anguish, loss of overtime, which he previously earned and diminution of quality of life.

**THIRD CAUSE OF ACTION**
**RETALIATION VIOLATION OF ADEA/RA**

137.     Plaintiff re-alleges all paragraphs to this complaint and incorporates them by reference as fully set forth herein.

138.     Plaintiff is over 40 years of age.

139.     Plaintiff has more than thirty years' service with the National Parks Service.

140.     Plaintiff is one of the most senior and experienced employees with the National

Parks Service and has received many outstanding performance awards.

141.     Defendants subjected Plaintiff to retaliation for his lawful complaints of discrimination based on his age.

142.     Plaintiff suffered adverse employment actions in retaliation for these complaints.

143.     The Defendant has target Plaintiff with retaliatory actions of treating him differently than other similarly situated employees with respect to reassignment, assignment of duties, denial of promotion and terms of conditions in employment, all in an effort to force him to take early retirement.

144.     The Defendant has targeted Plaintiff with harassment and retaliation on account of his complaints of age discrimination in order to force him to retire and denied him promotional opportunities.

145.     Numerous of the promotional opportunities in which Plaintiff was qualified for and applied were given to younger employees, often under the age of 40, who were less qualified, had less experience and were less seniority and expertise than Plaintiff, and were not in the protected class status under the ADEA.

146.     Multiple positions as detailed throughout this complaint were given to younger employees, often under the age of 40, who were less qualified, had less experience and were less seniority and expertise than Plaintiff, and were not in the protected class status under the ADEA.

147.     The Defendants have also treated Plaintiff differently than younger employees, under the age of 40, who held lower positions than Plaintiff but were treated more favorably in terms of their ability to work substantial overtime, which was denied to Plaintiff.

148.     As a result of the Defendant's retaliatory actions and harassment, on account of his complaints of age discrimination, Plaintiff has suffered physical and emotional injury,

mental anguish, loss of overtime, which he previously earned and diminution of quality of life.

## .JURY TRIAL

149.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court:

a.   Injunctive relief to place Plaintiff in a supervisory position retroactive to 2014 or as far back as the statute of limitations would allow;

b.   Award compensatory damages for the back pay, front pay, pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiff  and all other damages afforded to Plaintiff by statute or otherwise in an amount to be determined at trial;

c.   Award Plaintiff punitive damages in an amount to be determined at trial;

d.   Award Plaintiff costs for this action and reasonably attorneys' fees, as provided for in 42 USC §1988 and 42 USC §2000e-5(k) and;

e.   All defendants herein are joint and severally liable for the actions of the any and all of the named Defendants herein;

f.   Grant Plaintiff such other and further relief as may be required in the interest of justice.

Dated: May 9, 2023

New York, NY

Respectfully submitted,

By:____/s/_____
        John Scola

Law Office of John A. Scola, PLLC
Attorneys for Plaintiff Dave
McCutcheon
90 Broad Street,  Suite 1023
New York, New York 10004
(917) 423-1445
jscola@johnscolalaw.com